FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 25, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMERICAN FAMILY LIFE INSURANCE COMPANY, a Wisconsin insurance corporation,<br><br>    Plaintiff-Stakeholder,<br><br>v.<br><br>ESTATE OF ROBERT W. BRADLEY; SARAH McLAUGHLIN, an individual; AMY MARIE BRADLEY, an individual; KESHIA HAHN, an individual and personal representative of the Estate of Robert W. Bradley; ROLLAND HOOD, an individual; RICHARD HOOD, an individual; D.P., a minor; M.P., a minor; RE. B., a minor; RY. B., a minor; and DOES 1-25,<br><br>    Defendant-Claimants. | No. 2:23-CV-00312-MKD<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

ORDER - 1

SARAH McLAUGHLIN

        Cross-Claimant,

  v.

ESTATE OF ROBERT W. BRADLEY, an individual; AMY MARIE BRADLEY, an individual; KESHIA HAHN, an individual and personal representative of the Estate of Robert W. Bradley; ROLLAND HOOD, an individual; RICHARD HOOD, an individual; D.P., a minor; M.P., a minor; RE. B., a minor; RY. B., a minor; and DOES 1-25,

        Cross-Defendants.

ESTATE OF ROBERT W. BRADLEY, by and through personal representative Keshia Hahn; RE. B., a minor; RY. B., a minor,

        Cross-Claimants,

  v.

AMY MARIE BRADLEY, an individual; ROLLAND HOOD, an individual; RICHARD HOOD, an individual; D.P., a minor; M.P., a minor; RE. B., a minor; RY. B., a minor; and DOES 1-25,

        Cross-Defendants.

ORDER - 2

On March 17, 18, and 19, 2025, the Court conducted a bench trial. ECF Nos. 126, 130, 131. Jodi Thorp and David Turplesmith appeared for the Estate of Robert W. Bradley, Keshia Hahn, in her capacity as personal representative of the Estate of Robert W. Bradley, RE.B., and RY.B. (the "Bradley Claimants"). Patrick Harwood appeared for Amy Marie Bradley (now known as Rayvanna McQueen), M.P., and D.P. (the "McQueen Claimants"). William Spurr appeared for Sarah McLaughlin.

The issue presented for adjudication was: Did Robert Bradley's ("Mr. Bradley") 2022 Life Insurance Policy (the "2022 Policy") contain a material mistake as to the named beneficiaries that was inconsistent with his intentions, such that the Court should reform the 2022 Policy to reflect his intentions?[1] The Court has considered the evidence, heard from counsel, reviewed the record, and is fully informed. For the reasons described below, the Court finds the 2022 Policy contains ambiguities, as a result of a material mistake, and that the 2022 Policy's beneficiary designations, as written, do not reflect Mr. Bradley's intentions. The Court concludes the Bradley Claimants have met their burden of proving such a

---

[1] At the conclusion of the evidence, the Bradley Claimants disclaimed reliance on their previously advanced position that the Court should find the 2022 Policy void and determine its proceeds should revert to the Estate itself.

ORDER - 3

mistake by clear, convincing, and cogent evidence.  Exercising its discretion, the Court accordingly reforms the 2022 Policy's beneficiary designations to reflect that RE.B. and RY.B. are entitled to each receive 30% of the 2022 Policy's proceeds, in lieu of M.P. and D.P.  The balance of the recipients remains unchanged, as follows: Ms. McLaughlin is entitled to receive 37.5% of the 2022 Policy; and Ms. McQueen is entitled to receive 2.5% of the 2022 Policy.

This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

## FINDINGS OF FACT

### A. Mr. Bradley's Relationships

*i.    Mr. Bradley's Children*

1. Mr. Bradley had two biological children with Ms. Hahn—RE.B. and RY.B.
2. Mr. Bradley lived with Ms. Hahn and their children until he and Ms. Hahn separated in 2008.  From 2011 to 2019, Ms. Hahn, RE.B. and RY.B. lived in Tucson, Arizona.  In 2019, Ms. Hahn, RE.B. and RY.B. moved to Spokane, so that RE.B. and RY.B. could have more of a relationship with Mr. Bradley.
3. Mr. Bradley purchased a home at 2933 East Wabash Avenue, Spokane, WA, to have a house for RE.B. and RY.B. RE.B. moved in fulltime with Mr.

ORDER - 4

Bradley during Christmas break in 2021; RY.B. moved in fulltime by August 2022.

4. Ms. McLaughlin testified that Mr. Bradley financially supported RE.B. and RY.B. Ms. McLaughlin also testified that Mr. Bradley told her that RE.B. and RY.B. were on the 2022 Policy. Mr. Bradley told Ms. McLaughlin that, were something to happen to him, he wanted to take care of RE.B. and RY.B.

  ii.   *Mr. Bradley's Ex-Wife and Former Stepchildren*

5. Mr. Bradley married Ms. McQueen, formerly known as Amy Marie Bradley, on August 24, 2017.

6. Prior to her marriage to Mr. Bradley, Ms. McQueen had two children—M.P. and D.P.

7. Mr. Bradley and Ms. McQueen separated on November 1, 2020.

8. Prior to the separation, and after RE.B. and RY.B. relocated to Spokane in 2019, RE.B. and RY.B. visited their father's house a few times and RY.B. spent the night only once.

9. Ms. McQueen testified that RY.B. engaged in inappropriate behavior toward M.P., prompting a child services investigation. Ms. Hahn testified that the child services investigation concluded the allegations (including another involving RY.B. toward D.P.) were not substantiated and further testified

ORDER - 5

that child services instructed her to keep RY.B. away from Ms. McQueen and Ms. McQueen's children to avoid additional false allegations.

10. The Court finds Ms. Hahn's testimony concerning the allegations and investigation less than fully credible. [2]

11. A Final Divorce Order between Mr. Bradley and Ms. McQueen was entered in Kitsap County on June 25, 2021. The Final Divorce Order provided, among other things, that Mr. Bradley's existing life insurance policy reverted solely to Mr. Bradley; the two had no children together who were still dependent; and that neither a parenting plan nor child support applied. Exhibit 10.

12. Following Mr. Bradley and Ms. McQueen's divorce, Mr. Bradley did not see M.P. and D.P. There is no evidence to suggest that Mr. Bradley was in communication or spending time with M.P. and D.P. at the time he executed

---

[2] The Court notes, however, that none of the testimony concerning these allegations was offered for the truth of the allegations themselves. Rather, this evidence was admitted since Mr. Bradley was aware of the allegations as he was making decisions concerning his life insurance policy and his knowledge of the allegations may speak to his knowledge and intent of the beneficiary designations.

ORDER - 6

the 2022 Policy. M.P. and D.P. never visited or lived at Mr. Bradley's East Wabash Avenue residence.

  *iii. Mr. Bradley's Fiancée*

13. Mr. Bradley began dating Ms. McLaughlin in late November 2020 and the two were engaged by December 2021. Ms. McLaughlin lived with Mr. Bradley, RE.B., and RY.B. at 2933 East Wabash Avenue, Spokane, WA, prior to and at the time of Mr. Bradley's death.

**B. Mr. Bradley's Life Insurance Policies**

14. American Family Life Insurance Company ("AFLIC") issued a life insurance policy to Mr. Bradley, effective April 12, 2017, in the amount of $50,000. The policy designated RE.B., RY.B., and Richard Hood—Mr. Bradley's brother—as beneficiaries. This policy was prepared by Twyla Emig. Exhibit 1.

15. Following his marriage to Ms. McQueen, Mr. Bradley executed a "CHANGE OF BENEFICIARY – ALL LIFE INSURANCE POLICIES" form on December 19, 2017, designating Ms. McQueen as the 100% beneficiary of the policy and RE.B. and RY.B. as each 50% "contingent" beneficiaries. The form identified Ms. McQueen as Mr. Bradley's "SPOUSE" and each son as a "CHILD." Exhibit 1 at 18-19.

ORDER - 7

16. AFLIC issued a new life insurance policy to Mr. Bradley, effective January 17, 2018, reflecting a new amount of insurance—$250,000. This new policy's beneficiary (Ms. McQueen) and contingent beneficiaries (RE.B. and RY.B.) remained unchanged from the prior policy. This policy was prepared by Twyla Emig. Exhibit 2.

17. At the time she prepared Mr. Bradley's 2018 policy, Ms. Emig was unaware of M.P. and D.P.'s identities: she did not know Ms. McQueen had children and she did not know Mr. Bradley had stepchildren. She first learned Ms. McQueen had children only after Mr. Bradley's death.

18. Contrary to Ms. Emig's account, Ms. McQueen testified that Ms. Emig knew M.P. and D.P. by name and met them many times.

19. Following Mr. Bradley and Ms. McQueen's divorce, and prior to the execution of the 2022 Policy, RE.B. and RY.B. became the sole beneficiaries of the 2018 policy, consistent with the terms of Mr. Bradley and Ms. McQueen's Final Divorce Order and Washington law, *see* RCW 11.07.010(2)(a).

20. AFLIC issued a third life insurance policy—the 2022 Policy—to Mr. Bradley, effective June 8, 2022, reflecting a new amount of insurance—$1,000,000—and certain beneficiary changes. The 2022 Policy was

ORDER - 8

prepared by Patrick Gray, who became Mr. Bradley's life insurance agent after Ms. Emig left AFLIC.  Exhibit 3.

21. Unlike Ms. Emig, Mr. Gray did not require Mr. Bradley to come into the office and review the 2022 Policy in person.

22. The 2022 Policy misstates Mr. Bradley's address as "2933 W Wabash Ave."  Exhibit 3 at 30.

23. The 2022 Policy lists as the primary beneficiaries M.P. and D.P., each referred to as a "Child" of Mr. Bradley and listed as living at "2933 W Wabash Ave."; and Ms. Queen, identified as Mr. Bradley's "Former Spouse."  M.P. and D.P. are listed as each receiving 30%; Ms. Queen is listed as receiving 2.5%.  Exhibit 3 at 33.

24. Mr. Gray—understanding that Mr. Bradley wanted his "kids" listed as beneficiaries on the policy and neither distinguishing between nor knowing about Mr. Bradley's biological children and former stepchildren—pulled M.P. and D.P.'s information from AFLIC's existing, pre-populated household profile.

25. Testimonial evidence suggests this information became linked to Mr. Bradley during the time he and Ms. McQueen were married and was not decoupled from Mr. Bradley's household profile following his divorce.

ORDER - 9

26. Mr. Gray believed he was putting the names of Mr. Bradley's children on the 2022 Policy.

27. Mr. Gray did not learn that RE.B. and RY.B. were, in fact, Mr. Bradley's children until after Mr. Bradley's passing.

28. Mr. Gray did not know that RE.B. and RY.B. were living and/or residing most of the time with Mr. Bradley in April 2022.

29. Mr. Gray testified he had never met M.P. and D.P.

30. Contrary to Mr. Gray's account, Ms. McQueen testified her children had met Mr. Gray multiple times.

31. Because Ms. McQueen's testimony was so plainly inconsistent with Ms. Emig's and Mr. Gray's, the Court assesses Ms. McQueen as less than fully credible and assigns her testimony less weight than Ms. Emig's and Mr. Gray's.

32. Mr. Bradley signed this document at an unknown time on April 22, 2022. Mr. Gray signed this document at 11:14:18 on April 22, 2022. Exhibit 3 at 37-38.

33. However, Mr. Gray never personally showed or reviewed the document with Mr. Bradley.

34. Similarly, Mr. Gray testified that, while she was married to Mr. Bradley, Ms. McQueen would read documents and Mr. Bradley would sign them.

ORDER - 10

35. On the same day, Mr. Bradley executed a "SUPPLEMENTAL INFORMATION TO THE APPLICATION FOR LIFE INSURANCE" form. This form added Ms. McLaughlin—identified as Mr. Bradley's "Fiancée"—as a 37.5% beneficiary. Exhibit 3 at 39.

36. Mr. Bradley signed this document at an unknown time on April 22, 2022. Mr. Gray signed this document at 11:14:18 on April 22, 2022. Exhibit 3 at 39.

37. Mr. Bradley provided Ms. McLaughlin's personal information to Mr. Gray because she was a new beneficiary to the policy.

38. Mr. Gray already had Ms. McQueen's personal information, as Ms. McQueen had been the primary beneficiary on Mr. Bradley's prior policy.

39. As described above, M.P. and D.P.'s personal information had already been in AFLIC's household profile database and linked to Mr. Bradley.

40. A month later, Mr. Bradley executed a "POLICY SURRENDER IN FULL – ALL LIFE INSURANCE POLICIES" form, effectively replacing the prior 2018 policy with the 2022 Policy. This form similarly misstates Mr. Bradley's address as "2933 W Wabash Ave." Exhibit 2 at 48-49.

41. A DocuSign receipt maintained by AFLIC indicates that a total of six pages—two document pages and four certificate pages—were sent to Mr. Bradley at 3:49:58 P.M. on May 26, 2022; viewed by Mr. Bradley a minute

ORDER - 11

later, at 3:50:58 P.M.; and signed by Mr. Bradley sixteen seconds after viewing, at 3:51:14 P.M. Exhibit 2 at 50.

42. The 2022 Policy provided for a "Right to Examine and Return Within 30 Days." However, Mr. Gray testified that a hard copy of the 2022 Policy would have been sent to 2933 West Wabash Avenue, *i.e.*, the incorrect Wabash Avenue address. Exhibit 3 at 17.

### C. The 2022 Policy is Ambiguous

43. The 2022 Policy's designation of beneficiaries is ambiguous: neither M.P. nor D.P. are a child of Mr. Bradley's, and neither lived, at the time of the policy's execution, in Spokane with him.

44. Conversely, RE.B. and RY.B. are Mr. Bradley's children, and both lived with him.

### D. Mr. Bradley Intended to Designate RE.B. and RY.B. as Beneficiaries

45. Because the designation of beneficiaries is ambiguous, the Court must assess the totality of the evidence presented in an effort to ascertain Mr. Bradley's intention. *See, e.g.*, *Levas v. Metro. Life Ins. Co.*, 26 P.2d 1032, 1033-34 (Wash. 1933).

**46.** The Court finds the record clearly, cogently, and convincingly reflects that Mr. Bradley intended to designate RE.B. and RY.B. each as a 30% beneficiary on the 2022 Policy and, due to a mistake on Mr. Gray's part,

ORDER - 12

1  M.P. and D.P. were erroneously listed on the policy instead of RE.B. and

2  RY.B.  *See Akers v. Sinclair*, 226 P.2d 225, 231 (Wash. 1950) (stating

3  burden of proof); *Simonson v. Fendell*, 675 P.2d 1218, 1221 (Wash. 1984)

4  (en banc) ("A mistake is a belief not in accord with the facts.") (citation

5  omitted).

6  47. The Court finds the Bradley Claimants have more than sufficiently met their

7  burden in establishing a mistake on the policy.  *See Glepco, LLC v. Reinstra*,

8  307 P.3d 744, 751-52 (Wash. Ct. App. July 22, 2013), *review denied*, 315

9  P.3d 530 (Wash. 2013) (citation omitted).

10 48. The Court's findings are based on an assessment of the record, as described

11 above, and reasonable inferences drawn therefrom, to include:

12    a. Mr. Bradley had taken affirmative steps in the years and months prior

13       to the execution of the 2022 Policy to financially provide for RE.B.

14       and RY.B. and was making home improvements to facilitate his

15       children moving in with him fulltime.

16    b. RE.B. and RY.B. were the sole beneficiaries of the 2018 policy,

17       following Mr. Bradley's divorce.

18    c. Mr. Bradley explicitly told Mr. Gray he wanted "his kids" on the 2022

19       Policy.  The Court finds it unreasonable to conclude that Mr. Bradley

20       was referring to M.P. and D.P., whom he had not spoken to since his

ORDER - 13

      and Ms. McQueen's separation, and not RE.B. and RY.B., who were living with him and who were listed as beneficiaries on Mr. Bradley's prior policies.

d. Consistent with the above inference, Ms. McLaughlin credibly testified that Mr. Bradley informed her that she and RE.B. and RY.B. were beneficiaries on the 2022 Policy. Ms. McLaughlin also credibly testified that Mr. Bradley wished that, were something to happen to him, he wanted to financial care of RE.B. and RY.B.

e. Mr. Bradley's execution of a supplemental form—to add Ms. McLaughlin as a new beneficiary—is consistent with both Mr. Gray's and Mr. Bradley's understanding that no other new beneficiaries (*i.e.*, M.P. and D.P.) were being added to the policy. As noted above, RE.B., RY.B., and Ms. McQueen were previously listed on Mr. Bradley's policy and Mr. Gray mistakenly believed he possessed their personal information.

f. Further, the record suggests that Mr. Bradley was unaware of the mistake as to the listed beneficiaries on the 2022 Policy. Rather, the record suggests Mr. Bradley might not have read the 2022 Policy—as was his practice—and the record credibly indicates Mr. Bradley

ORDER - 14

      executed a subsequent policy document totaling six pages only sixteen seconds after viewing it.

   g. Because the 2022 Policy also misstated Mr. Bradley's home address, it is also reasonable to conclude Mr. Bradley did not receive a hard copy of it and could not have availed himself of the opportunity to exercise his right to examine it within thirty days.

   h. It is undisputed that Mr. Bradley did not review the 2022 Policy in person with Mr. Gray.

   i. It is also undisputed that Mr. Bradley never listed M.P. and D.P. on any prior policy and was not financially responsible for them at the time he executed the 2022 Policy.

49. Because the Court finds the record more than sufficiently demonstrates—by clear, convincing, and cogent evidence—that the 2022 Policy's beneficiary designation contains a mistake, the Court agrees with the Bradley Claimants that reformation of the policy is necessary.

## CONCLUSIONS OF LAW

**E. Jurisdiction**

50. This is an interpleader action brought pursuant to 28 U.S.C. § 1332 and Fed. R. Civ. P. 22.

ORDER - 15

51. The Court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff, a corporation incorporated under the laws of the State of Wisconsin, and Defendants, citizens of the State of Washington, and the amount in controversy exceeds $75,000.

52. Venue is proper in the Eastern District of Washington, pursuant to 28 U.S.C. §§ 1397 and 1391, because Mr. Bradley resided and was employed in this judicial district, a substantial part of the events giving rise to the action occurred in this judicial district, and many of the claimants reside in this judicial district.

**F. Reformation of the 2022 Policy**

53. "Reformation is an equitable remedy employed to bring a writing that is materially at variance with the parties' agreement into conformity with that agreement." *Denaxas v. Sandstone Ct. of Bellevue, L.L.C.*, P.3d 125, 132 (Wash. 2003) (citation omitted).

54. "An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it." *Rocky Mountain Fire & Cas. Co. v. Rose*, 385 P.2d 45, 49 (Wash. 1963).

ORDER - 16

55. The Court concludes that reformation of the 2022 Policy is necessary to correct a material mistake as to the listed beneficiaries and to reflect Mr. Bradley's intentions with respect to the policy's designation of beneficiaries.

56. Consistent with the above-described findings of fact, the Court concludes as a matter of law that the 2022 Policy's beneficiary designations shall read as follows:

   a. RE.B. – **30%**

   b. RY.B. – **30%**

   c. Ms. McLaughlin – **37.5%**

   d. Ms. McQueen – **2.5%**[3]

## CONCLUSION

For the reasons described above, the Court **FINDS AND CONCLUDES** that the proceeds of the 2022 Policy, previously deposited into the Court's registry, shall be distributed in accordance with Paragraph 56 of this Order. Specifically, the Clerk of Court is directed to disburse the funds held in the Court's registry, less the fee from the income earned on the deposited proceeds, at the rates published by the Director of the Administrative Office of the United States Courts, as follows:

---

[3] The Court notes that AFLIC already distributed $6,250 to Ms. McQueen in or around October 2022. ECF No. 1 at 8 ¶ 29.

ORDER - 17

1. RE.B. – **$300,000, plus any accrued interest.**

2. RY.B. – **$300,000, plus any accrued interest.**

3. Ms. McLaughlin – **$375,000, plus any accrued interest.**

4. Ms. McQueen – **$18,750, plus any accrued interest.**

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this order, disburse the funds accordingly, **enter judgment**, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 25, 2025.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 18